STATE OF VERMONT

SUPERIOR COURT                          ENVIRONMENTAL DIVISION
Vermont Unit

| In re: Vt. Turquoise Hospitality, LLC, d/b/a Aeolus Mountain Spa (Indirect Permit No. ID-9-0313) | Docket No. 131-8-14 Vtec |
| In re: Vt. Turquoise Hospitality, LLC, d/b/a Aeolus Mountain Spa municipal permit application | Docket No. 124-9-12 Vtec |

**Judgment Order**[1]

Vermont Turquoise Hospitality, LLC ("Applicant") proposes to develop its property at 5940 Main Street (also known as Vermont Route 7A) in Manchester, Vermont with a hotel, conference and function facility, to be known as the Aeolus Mountain Spa.

To complete this proposed development, Applicant sought and obtained a number of State and municipal permits. Several of those permits have either not been appealed or have otherwise become final. The proceedings before this Court only concern two permit applications. Docket No. 131-8-14 Vtec concerns an appeal from the proceedings before the Department of Environmental Conservation ("DEC") of the Vermont Agency of Natural Resources ("ANR") wherein Applicant seeks an Indirect Discharge Permit for authority to discharge treated wastewater from its proposed development; the wastewater will be collected and treated by an on-site and pressurized wastewater treatment system that DEC has independently authorized; that permit (Permit No. WW-8-1574, issued on August 8, 2014, a copy of which was admitted at trial as Applicant's Exhibit 8) has become final and was therefore not the subject of our review in these appeals.

---

[1] The municipal appeal concerns an application that was originally filed by Alpasian Basdogan and suggested a business or corporate name of "Asia Minor Hotel/Resort/Spa. The Court therefore used that latter name when it docketed the appeal. However, at trial, Applicant advised that both of the pending applications were now presented in the name of Vt. Turquoise Hospitality, LLC, d/b/a Aeolus Mountain Spa. The Court has therefore revised the appeal captions to correctly refer to the current applicant and business name in each Docket.

The term "Indirect Discharge Permit" warrants some explanation. When a wastewater or other water treatment facility, even when permitted, is likely to discharge treated waste into groundwater in excess of 6,500 gallons per day ("GPD"), that facility will also be required to obtain an ANR Indirect Discharge Permit. As with the wastewater treatment system for the proposed project here, the fact that the proposed wastewater treatment system received a permit does not obviate the requirement to obtain a separate Indirect Discharge Permit ("ID Permit"). The need for ID Permit review becomes more concerning where, as here, the proposed discharge has the capacity to reach some State waters. Here, the proposed project is about 800 feet from the eastern banks of the Battenkill and the West Branch of the Battenkill.

Docket No. 124-9-12 Vtec concerns an appeal from the proceedings before the Town of Manchester Development Review Board ("DRB") wherein Applicant sought conditional use and site plan approvals and a zoning permit pursuant to the Town of Manchester, Vermont Zoning Ordinance ("Ordinance", a copy of which was admitted at trial as Appellant's Exhibit 1). Applicant's property is located in both the Farming & Rural Residential Zoning District and the Transient Commercial Overlay District, which therefore required Major Development and Design review and approval. See Ordinance §§ 3.3, § 3.4. § 4.1, § 6.3, § 8.9, and § 8.10.

Neighbor Carol DuPont filed a timely appeal when the DRB approved Applicant's municipal application; Neighbor Richard B. Smith filed a timely appeal when the DEC approved Applicant's ID Permit application (Permit No. ID-9-0313, a copy of which was admitted at trial as Appellant's Exhibit 23). Both of these Appellants initially appeared as self-represented litigants. At time of trial, Appellants had retained Attorney Paul S. Gillies, Esq., who assisted Appellants throughout the two-day trial.

Attorney Christopher D. Roy, Esq. assisted Applicant throughout these proceedings. Attorneys Leslie A. Welts, Esq. and Anne F. Whiteley, Esq. assisted ANR. Attorney Robert E. Woolmington, Esq. assisted the Town of Manchester ("Town").

The Court held a site visit at the subject property and surrounding neighborhood, including Appellants' homes, on April 3, 2015. The site visit provided helpful context for the evidence received at the coordinated trial on both Dockets, which was conducted on July 14 and 15, 2015.

Prior to trial, the Court addressed several legal issues in each appeal. See In re Asia Minor Hotel/Resort/Spa, No. 124-9-12 Vtec (Vt. Super Ct., Envtl. Div. June 4, 2013)(Durkin, J.) and In re Vt. Turquoise Hospitality, LLC Discharge Permit Application (Permit # ID-9-0313), No 131-8-14 Vtec (Vt. Super Ct., Envtl. Div. June 24, 2015)(Durkin, J.). While neither Decision resolved all the legal issues presented in each appeal, the Court did grant summary judgment to Applicant on some of the legal issues presented by each Appellant in each appeal, thereby narrowing the legal issues to be addressed at the coordinated trial. Id.

On July 9, 2015, Appellants filed a joint pre-trial memorandum that included an effective summary of the remaining legal issues that provided the Court with a helpful organization; the Court relied upon Appellants' summary of the remaining legal issues during the course of the trial and in the organization of its Findings of Fact and Conclusions of Law.

At trial, and after all parties had a full opportunity to present their evidence, the Court took a recess to review the evidence, conduct legal research, and deliberate. The Court thereafter reconvened the hearing and announced its Findings of Fact, Conclusions of Law, and Order. This Judgment Order is provided as a summary of those Findings and Conclusions and to satisfy the Court's obligation under Vermont Rule of Civil Procedure 58. To the extent that a reader wishes to review the Court's Findings and Conclusions, that reader is referred to the audio record or transcript of the July 15, 2015 hearing.

**Summary of Findings of Fact**

1. The proposed project will include the following components: (a) renovations to an existing farmhouse for use as a guest home for the owner's clients and friends; (b) renovations to an existing barn and conversion to professional office and storage; (c) construction of a new barn-like structure for professional office use, storage, and parking of antique cars for use by hotel guests; (d) construction of a new single family home; and (e) construction and operation of a new hotel/spa/restaurant/ function facility with 80 rooms and restaurant/function capacity for 160 people.

2. One concern repeated throughout trial, particularly concerning the municipal permit application, was that the application and site plan had been revised since it was first presented to the DRB and that because of these revisions, the application should be remanded to the DRB.

Appellant expressed similar concerns in the ID Permit appeal. Examples of such changes included added detail for the proposed lighting fixtures, more detail as to the landscaping and screening, and failure to depict on the initial site plan a water course, ditch or stream that occasionally flows on or near the property; the revised site plans presented at trial included all these revisions, with the exception of the water course. See Applicant Exhibits 3.1 through 3.20. While Applicant did not dispute that these details were added after the DRB and DEC reviews, it asserted that the increased detail in the site plan did not warrant remand for additional review before the DRB or DEC. We agree with Applicant. These additional details do not represent a material change in the project and were provided in response to concerns expressed by neighbors, including Appellants here.

3.     We found some of the photos Applicants presented confusing and not credible representations of what Applicants suggested. In particular, Appellant Exhibits 5 and 11 do not appear to represent what Appellants suggested. One photo in particular – Exhibit 11 – if taken from the location and direction suggested, could not represent a view of the project site, since the site, put in context by the site plans, has a steep wooded embankment between the open area the photo shows and the project site.

4.     The revised plans provide complete review of the necessary details of the project. The new buildings of the development, particularly the hotel/spa, are sited away from the frontage along Route 7A, on a plateau that is mostly screened from views of properties to the north, west, and south. While a portion of the new parking areas and walkways may be visible from the homes and other properties to the east, the proposed landscaping, walkways and arbors will provide sufficient screening.

5.     Mrs. DuPont acknowledged that her view of the new development may be limited to only seeing a portion of the landscaped corner of the new parking area, but expressed concern about the possible reflection from vehicle roofs parked in the lot. Applicant did not dispute Mrs. duPont's statements in this regard and did not object to her suggestion that a tree planted on the northeastern corner of the parking area, outside the arbor walkway, would provide sufficient additional screening.

6.      Potable drinking water will be supplied to the project by a municipal public water supply system; Applicant has secured the necessary approvals and permit(s) to hook up to the public water supply system.  This public water supply will also provide sufficient water for the proposed wastewater delivery and treatment needs for the project.

7.      Wastewater permit applications and ID Permit applications are based upon the same basic estimate: the estimated daily flow of water that a project will require and the estimated wastewater that a project will produce.  In regards to an ID Permit application, the estimated wastewater flows are calculated in gallons per day ("GPD") and are based upon a maximum capacity of all facilities on a given day.  Such estimates were referred to as "Maximum Daily Flows" by all parties; such an estimate is often referred to as the "design flow."  However, Appellants appeared to sometimes confuse this estimate with "actual flows."  In fact, to the extent that actual flows of wastewater into and out of a proposed treatment system is a proper topic in any ID Permit appeal, we note that the uncontested, credible evidence is that historical commercial wastewater treatment systems produce actual flows that represent as low as 40% of the estimated design flows that were relied upon in permitting the system.

8.      The most credible evidence supports the estimated design flows projected for the project as prepared by the DEC Rutland Regional Engineer and relied upon in DEC's review of Applicant's ID Permit application.  The Regional Engineer completed his estimates after questioning Applicant's engineer and seeking verification of Applicant's representations.  These discussions were a credible attempt to arrive at an accurate estimate and not, as Appellants suggested, a "negotiation" that resulted in a "compromised" estimate.

<u>**Conclusions**</u>

With reference to Appellants' Pre-trial Memorandum (filed July 9, 2015), the Court addresses the agreed-upon legal issues remaining in each appeal:

**I.  Municipal Permit Appeal (Docket No. 124-9-12 Vtec):**

1. The application and supporting site plans are complete and provide sufficient details of the proposed project, landscaping and lighting details.  See Applicant Exhibits 3.1 through 3.20 and Exhibits 9 through 12.

2. While the revised site plans do not depict the drainage ditch that runs along a portion of the western boundary of the property and then for a short period travels onto the property, this omission does not deem the revised application and site plans incomplete under the applicable Ordinance provisions, since the credible evidence showed that this water course is mostly a roadside ditch and that the water flow travels underground shortly after entering the property. Where the water does flow on the property, it is not in the vicinity of any portion of the proposed development. The credible evidence did not support Appellants' assertion that occasional seasonal flooding occurs in the vicinity of any portion of the proposed development, including the already-permitted on-site leach fields.

3. There was no credible evidence presented that the proposed and permitted water supply will be insufficient to satisfy the project's septic needs. There was no credible evidence to support Appellants' assertions that the project as proposed will actually exceed 20,000 GPD of water or wastewater.

4. The revised site plans sufficiently show the details for the proposed pedestrian paths, landscaping, and site conditions.

5. Applicant secured the necessary "ability to serve" verifications from Town officials. See Applicant Exhibits 40 through 43. The application was supported by all "ability to serve" letters required by the applicable Ordinance provisions.

6. The revised site plans are of a scale allowed by the applicable Ordinance provisions.

**I. Indirect Discharge Permit Appeal (Docket No. 131-8-14 Vtec):**

1. The credible evidence revealed that the design flows estimated and relied upon by DEC officials included all components of the proposed project that are required under the applicable provisions of the Vermont Water Supply Rules, the Vermont Indirect Discharge Rules, and the Vermont Water Supply and Wastewater Disposal Rules that were preserved for our review in this appeal.

2. The credible evidence revealed that both the estimated design flows and the actual daily flows for this project will be below 20,000 gallons per day. Based upon this

evidence and applicable Rules, we reject Appellants' suggestion that ID Permit #ID-9-0313 should be voided or deemed incomplete.

For all these reasons, we **Affirm** the August 24, 2012 DRB approval[2] of Applicant's municipal permit application, subject to the following conditions:

1. The project is to be constructed and operated in accordance with all plans and specifications as presented at trial.

2. Within 30 days after the time for appeal has passed, Applicant shall file a complete set of applicable site plans with both the DRB and ANR.

3. Applicant will install, maintain, and replace, if necessary, a 10 to 15 foot evergreen tree[3] in the northeast corner of the parking lot.

The proceedings in Docket No. 124-9-12 Vtec are hereby remanded to the Town of Manchester Zoning Administrator, solely to complete the ministerial act of issuing a zoning permit to Applicant in conformance with this Judgment Order.

For all the same reasons, we **Affirm** ID Permit #ID-9-0313 as issued on August 6, 2014 by the DEC. See Appellants Exhibit 23.

This completes the current proceedings before this Court in both of the above-referenced Dockets.

Electronically signed on July 23, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

---

[2] See Applicant Exhibit 5.
[3] The parties may agree to a tree other than an evergreen as long as it measures at least 10 feet when planted and will grow to at least 15 feet.